# EXHIBIT 12



**DEPARTMENT OF HEALTH & HUMAN SERVICES**  Health Resources and Services Administration

Rockville, MD 20857

12-19-18

Ms. Sue Dunn, RN, BSN, MBA
President, Organ Procurement and Transplantation Network
Chief Executive Officer
Donor Alliance
200 Spruce Street – Suite 200
Denver, CO 80230

Dear Ms. Dunn:

HRSA writes in response to the liver allocation policy approved by the Organ Procurement and Transplantation Network (OPTN) Board of Directors (OPTN Board) on December 3, 2018, and upon review of the OPTN's summary of its deliberations and the rationale for this policy under the OPTN final rule. HRSA expresses its appreciation for the substantial time the OPTN Board, the OPTN Liver and Intestine Committee (Liver Committee), and others have expended in developing this policy. Through this letter, HRSA continues its longstanding practice of relying on the expertise of the OPTN and its members (representing stakeholders within the transplant community and the public), to consider and address the requirements of the OPTN final rule as organ allocation policies are developed and revised. HRSA has carefully monitored the OPTN's deliberations and is satisfied that the OPTN complied with HRSA's expectations outlined in the enclosed letter to the OPTN, dated July 31, 2018.

In that letter, HRSA informed the OPTN of its determination that the OPTN "had not justified and could not justify the use of donation service areas (DSAs) and OPTN Regions (as currently constituted) in the current liver allocation policy and in the revised liver allocation policy approved by the [OPTN Board] in December 2017, under the requirements of the final rule." HRSA explained that neither DSAs nor OPTN Regions were created to allocate organs equitably or to optimally distribute donated organs. HRSA further explained that the 58 DSAs and the 11 OPTN Regions in the United States vary widely in geographic size and population. HRSA's letter and guidance resulted from the agency's consideration of critical comments received by the Secretary of Health and Human Services in May 2018 and were informed by the OPTN's June 25, 2018, response to HRSA on such critical comments. In its response, the OPTN acknowledged that it had "previously recognized and again confirm[ed]" that DSAs are not a good proxy for geographic distance between donors and transplant candidates and that OPTN Regions are an imperfect substitute for proximity between donors and candidates. The OPTN's response further acknowledged that:

> . . . the disparate sizes, shapes, and populations of DSAs as drawn today are not rationally determined in a manner that can be consistently applied equally for all candidates. Accordingly, the OPTN is committed to a multi-step plan to eliminate the use of DSAs in the distribution of livers in a deliberative process and timeframe that will reduce the likelihood of unintended consequences including the significant potential for increased

organ wastage or harm to patients waiting if a precipitous change were made to the revised Liver Policy without the benefit of any modeling and stakeholder input.

HRSA's July 31 letter set forth its expectation that such scientific modeling by the Scientific Registry of Transplant Recipients (SRTR) and public input should inform any further actions by the OPTN Board. The letter also made clear that HRSA was not directing any particular policy outcome nor allocation scheme but that the OPTN Board should approve a liver allocation policy, consistent with the terms described in the letter and in the OPTN final rule, by its December 2018 meeting.

The OPTN Board was directed to provide its written rationale, together with supporting evidence, explaining how any geographic limitation is justified and required by 42 CFR 121.8(a)(8), including the size and shape of any geographic units selected. Because the OPTN final rule permits geographic limits based on transplant candidates' place of residence or listing only *to the extent required by* one of the factors described in 42 CFR 121.8(a)(l)-(5), the OPTN Board was instructed to provide its rationale as to how any specific geographic unit of distribution is justified by one of those regulatory factors.

The OPTN engaged in an intense and deliberative process to develop, consider, and adopt a new liver allocation policy. HRSA recognizes that the policy approved by the OPTN Board on December 3, 2018, builds on years of discussion and input from the community and the public on other previously considered concepts and draft policies. The OPTN Board, the entity authorized to make decisions on behalf of the OPTN and its membership, is comprised of dedicated individuals who possess renowned expertise and represent the diversity of transplant stakeholders.[1]

---

[1] Consistent with the OPTN final rule, approximately 50 percent of the 41 members of the OPTN Board are transplant surgeons and transplant physicians. 42 CFR 121.3(a)(1)(i). At least 25% of the Board are a diverse cross-section of transplant candidates, transplant recipients, organ donors and donor family members. 42 CFR 121.3(a)(1)(ii). Representatives of organ procurement organizations, transplant hospitals, voluntary health associations, transplant coordinators, histocompatibility professionals, a pediatric specialist and non-transplant professionals (including professionals from law, theology, ethics, health care financing, public health, social and behavioral sciences, and labor and management unrelated to health care) also serve on the OPTN Board. 42 CFR 121.3(a)(1)(iii). Of these 42 members, 11 are regional councilors chosen by voting OPTN members to represent each geographic region in the United States. HRSA representatives also serve as *ex officio* non-voting members of the OPTN Board.

HRSA appreciates the extensive analysis prepared by the SRTR[2] of both proposed policies developed by the Liver Committee – Broader two Circles (B2C) and Acuity Circles.[3] Such proposed policies were among the five liver models simulated by the SRTR in 2018, which built upon 69 scenarios for liver allocation previously simulated by the SRTR.

HRSA commends the Liver Committee's outreach efforts and its almost weekly deliberations concerning potential policies, data, and public comments. The Liver Committee's solicitation of public comments on the policies under consideration (between October 8, 2018, and November 1, 2018) generated substantial interest by the public, with a total of 1,242 public comments submitted, representing the diversity of the OPTN's membership, stakeholders, professional societies, and members of the public from at least 41 states, Puerto Rico, and Guam. The Liver Committee also engaged in outreach by hosting 2 national and 11 regional webinars for OPTN members and other interested members of the public and by presenting at each of the OPTN's 11 regional meetings. Eleven members of the Liver Committee voted to recommend that the OPTN Board approve the B2C proposed policy (incorporating some changes responsive to public comments) and nine members voted in favor of the Acuity Circles proposed policy.

Briefing materials considered by the OPTN Board prior to its meeting presented the Liver Committee's process, a description of alternate policies considered, an explanation of the Liver Committee's views on the B2C and Acuity Circles proposals, an overview of relevant data and modeling, and an analysis of the public comments. In addition, the OPTN Board was presented with recommendations by multiple OPTN committees (the OPTN Patient Affairs, Minority Affairs, Pancreas Transplantation, Transplant Coordinators, Operations and Safety, Ethics, and Organ Procurement Organization Committees).

The OPTN Board discussed these materials at an in person meeting on December 3, 2018, and considered the recommendation of the Liver Committee to pursue the B2C proposed policy. After a robust discussion in which presentations in favor of the B2C and Acuity Circles

---

[2] The SRTR is the entity operated under contract with HRSA that provides statistical and other analytic support to HHS and to the OPTN to assist in the formulation and evaluation of OPTN policies. SRTR data requests are performed by software developers and statisticians with decades of combined experience in transplantation and are reviewed by SRTR experts in transplantation, modeling and biostatistics with more than 1,000 peer-reviewed publications. Since 2001, the SRTR has used simulation modeling to help OPTN committees identify unintended consequences of policy changes, identify the direction and relative magnitude of changes in key metrics, and quantify logistical impacts of organ sharing. In validation testing, SRTR models have been shown to be well-calibrated to observed data and have predicted the correct direction and relative magnitude of change for several key metrics after prior changes in allocation policies.

[3] The 21 members of the Liver Committee contribute diverse expertise and perspectives, includes transplant surgeons, transplant physicians, organ procurement organization professionals, transplant coordinators, and a transplant recipient (who is also a hepatologist). Eleven members are regional representatives representing each of the geographic regions in the United States. A HRSA representatives serves as an *ex officio* non-voting member of the Liver Committee.

proposals were presented and debated, the OPTN Board voted to adopt the Acuity Circles proposed policy by a final vote of 30 in favor, 7 against, and 2 abstentions.[4]

The Acuity Circle proposed policy uses distance-based circles with small bands of a few MELD/PELD[5] points as the units of distribution. The OPTN Board provided a reasoned rationale for the use of geographic boundaries in the Acuity Circle proposal, which acknowledges the need to share livers broadly and prioritizes the most medically urgent transplant candidates. The OPTN Board determined that Acuity Circles as adopted reflect an appropriate balance of the regulatory factors and could be distinguished from DSAs and OPTN Regions. Unlike DSAs, the Acuity Circles adopted were designed for the purpose of organ allocation and to optimally distribute donated organs and were rationally determined in a manner that can be consistently applied equally for all transplant candidates. The OPTN Board analyzed the policy adopted in light of each of the regulatory requirements set forth at 42 CFR 121.8(a)(1)-(5), (a)(8). For example, the OPTN Board considered the need for efficient management of organ placement by accommodating population density through the use of increasingly larger distribution circles.

HRSA also notes that the OPTN analyzed the impacts of the potential policy on various demographic groups, including racial and ethnic minorities, those disadvantaged by lower socioeconomic status, and pediatric transplant candidates and found these groups would not be disadvantaged by the policy changes and that pediatric transplant rates were predicted to increase. The policy also aims to increase utilization of organs from donors older than age 70, and/or those who die as a result of cardiorespiratory failure by distributing these organs more proximately to the donor hospital to maximize use of these organs, which have been found to have better outcomes when cold ischemic time is limited.

HRSA expects the OPTN to proceed expeditiously in implementing the December 2018 liver allocation policy. As always, HRSA expects the OPTN to review organ allocation policies periodically and to revise them as appropriate. 42 CFR 121.8(a)(6).

Finally, HRSA looks forward to continued efforts with the OPTN and others in the transplant community to increase organ donation and the overall number of successful organ transplants.

Sincerely,

George Sigounas, MS, Ph.D.
Administrator

---

[4] This final vote followed an earlier vote in which the OPTN Board voted to pursue the Acuity Circles proposal instead of the B2C proposal (by a vote of 24 in favor, 10 against, and 0 abstentions).

[5] The MELD is a model for end-stage liver disease and the PELD is a pediatric model for end-stage liver disease.

Enclosure