# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

RANDALL CALLAHAN, et al., )
    Plaintiffs, )
       v. )
UNITED STATES DEPARTMENT )
OF HEALTH AND HUMAN )
SERVICES, et al. )
    Defendants. )

CIVIL ACTION NO.
1:19-cv-1783-AT

## PLAINTIFFS' SEALED NOTICE
## IN RESPONSE TO THE COURT'S ORDER OF SEPTEMBER 30, 2021

Pursuant to the Court's September 30, 2021 Order, Plaintiffs, following the conclusion of the Rule 56(d) discovery authorized by same, respectfully file this sealed Notice explaining, in 20 pages or fewer, their position on (1) whether additional discovery or supplementation of the administrative record is warranted based on discovery from UNOS; and (2) whether Defendants' motions for summary judgment are ripe for review, or, alternatively, whether the Court should authorize supplemental briefing.

## SUMMARY

The supplemental Rule 56(d) discovery authorized and now completed will allow Plaintiffs, if permitted, to demonstrate that the liver allocation policy here

challenged was the product of a process intended and implemented to illegally bypass the science-based policymaking strictures of the National Organ Transplant Act ("NOTA") and the Final Rule in favor of a pre-ordained politically favored result.

Documents produced in discovery make clear that in the guise of responding to patient-fronted lawsuits engineered by the Greater New York Hospital Association ("GNYHA") and like interests, and to assist that powerful but frustrated segment of the transplant community, UNOS permitted the OPTN Executive Committee to wield artificial "emergency" power—justified by no more than a regulatory "laugh test"—and employ legal jargon—applauded by 56(d) deponent Brian Shepard for its capacity to confuse and obscure—to illegally bypass the OPTN Board and improperly override longstanding medical concerns and legitimate transplant community consensus.

Documents finally produced in discovery now also make clear that HHS officials were fully aware of and complicit in this scheme, signing on to the bypass strategy and facilitating its execution by issuing directives as secretly suggested by UNOS for the purpose of allowing UNOS to implement the GNYHA-sponsored result—as proposed by 56(d) deponent Alexandra Glazier—"without [HHS] directly touching it."

Based on the 56(d) discovery, Plaintiffs respectfully submit that the Court should (1) reopen briefing on Defendants' summary judgment motions and permit Plaintiffs' to now file a summary judgment motion of their own and seek supplementation of the administrative record, including on UNOS's qualification as an agency for purposes of the Administrative Procedure Act; and (2) entertain a motion from Plaintiffs to permit appropriately tailored inquiry and require UNOS to show cause why it should not be sanctioned, including specifically for its failure to produce certain communications with HHS at the time of the Court's consideration of Plaintiffs' 2019 motion for preliminary injunction.

## **DISCUSSION**

Discovery makes clear that the UNOS scheme to bypass NOTA and the Final Rule started with lung but always with the express objective of employing it to derail and replace the liver allocation policy due to be approved by the OPTN Board in December 2017. The trigger in each case was the filing of a patient-fronted Critical Comment by GNYHA-financed attorney Motty Shulman proclaiming that the donor service areas ("DSAs") so long established in organ allocation policy were drawn without regard to their utility in allocation and thus were inherently arbitrary and illegal. This despite the fact, nowhere acknowledged in Shulman's papers, that NOTA itself required DSAs to be drawn to assure

3

"maximum effectiveness" in the "equitable distribution of organs." 42 U.S.C. § 273(b)(1)(E).

In the case of lung, Shulman submitted his Critical Comment challenging the legality of DSAs on Thursday, November 16, 2017. UNOS_0107632.[1] By the end of the next day, in discussions and emails with HHS attorney Emily Levine, HRSA's OPTN liaison Melissa Greenwald, and Shepard, Glazier had flagged the Comment as a "unique opportunity"—a phrase she emphasized by repetition—for the Secretary to effect the removal of DSAs from lung allocation policy "in a way that sends an important and powerful signal about a more controversial topic"— liver allocation policy—"*without directly touching it*."[2] By Sunday, before Shepard had even informed the Board of the Comment's filing, UNOS had completed the

---

[1] Copies of all UNOS and HHS documents referenced herein are in Exhibit A, ordered by production number. Additional documents, including 56(d)-produced documents, would be submitted in connection with new briefing as to bad faith and UNOS's agency status and a motion to show cause.

[2] UNOS_0107628 (emphasis in original). Glazier even went so far as to propose language that would become a model for later HHS DSA directives and re-sent the same "unique opportunity" email to Shepard seven months later, amid the liver change. UNOS_0143680. *See also* UNOS_0104403. Court orders required UNOS to produce each of these three records to Plaintiffs in connection with the Court's consideration of Plaintiffs' 2019 preliminary injunction motion, but UNOS did not do so.

internal programming necessary to eliminate DSAs from lung allocation and was

"ready for deployment now." UNOS_0106273. Less than a week later, HHS

ordered the change, HHS_00002220; UNOS deployed it, UNOS_0097315 (staff

called it an "[e]xcellent win"), and the UNOS/HRSA inner circle celebrated with

proposed toasts.[3]

In the interim, Shulman filed his lawsuit and the federal district court heard

and, not surprisingly, denied his TRO motion, specifically rejecting its DSA

argument. *Holman v. U.S. Dep't of Health & Human Servs.*, No. 1:17-cv-09041

(S.D.N.Y., filed Nov. 19, 2017), Doc 13 at 32-33.[4] But HHS, which had confirmed

---

[3] The afternoon the lung change was ordered, HRSA OPTN liaison Greenwald emailed the Executive Committee with the news that stipulations to drop the suit were expected Monday. UNOS_0023626. A member of the Executive Committee leadership quickly replied but to a smaller group, including Greenwald and Shepard:

> Not ready to say this beyond the four of us yet but thanks to Brian and Melissa for seeing the implications of this case and quickly crafting a solution that not only addressed the immediate problem but strengthens our ability to address liver and other difficult issues facing the OPTN.

*Id.* Greenwald responded with thanks, and "I agree there are still rough waters ahead. And feel confident they can be navigated." UNOS_0023631. After one Executive Committee member then emailed her plan to open a "special bottle of wine," Greenwald replied, "Scotch. This is all." UNOS_0023621.

[4] "I find that the plaintiff has not made the requisite, clear showing of likelihood of success on her claim that the entire DSA-based aspect of the current lung allocation system is arbitrary and capricious and non-compliant with the requirements of the regulation published at 42 CFR 121.8. This includes my

en route to the hearing UNOS's desire to use the lawsuit to eliminate DSAs,

UNOS_0107616, *sua sponte* invited the court to order HHS to direct the OPTN

Executive Committee to undertake an expedited review of the policy. *Holman*,

Doc. 13 at 14, 20. After the court expressed concern and received assurances

(hollow as it turned out) that this review would consider the interests of patients

other than Shulman's as well as expert opinion and data, and that "other outside

submissions would be solicited or entertained," *id*. at 22, 24-25, the court

acquiesced to HHS's invitation and ordered it to undertake the offered review.

*Holman*, Doc. 6.

What followed was a regulatory version of the Texas two-step, as suggested

by Glazier, described by Shepard, UNOS_0248085; UNOS_0248109, and

orchestrated by UNOS, that was first employed in lung and then again in liver: In

reaction to threatened or filed legal action from GNYHA-backed Shulman

challenging the use of DSAs, HHS—with specific advice on appropriate wording

and assurances as to the outcome—issued a directive to the OPTN to expeditiously

respond with a defense. Then UNOS, blaming the HHS directive for necessitating

---

finding that plaintiff has not made the requisite showing that the DSA-based
aspects of the system arbitrarily discriminate against lung candidates with high
LAS scores."

expeditious action, convened the OPTN Executive Committee to provide the pre-ordained response, artificially and improperly bypassing the full Board.[5] In violation of NOTA and the Final Rule, the Executive Committee disregarded the clear consensus of both the full Board and the specific organ committees that continued use of DSAs should be defended and failed to provide HHS with a defense, leaving HHS with the proverbial 'no choice' but to direct the OPTN to remove DSAs from the organ allocation policy. The result in each case was an illegitimate sea change in organ allocation policy prompted not by science but by regional bias and accomplished not by the transplant community and OPTN Board but by UNOS insiders and the Executive Committee alone.

In lung, the time from the Shulman Critical Comment to HHS directive to eliminate DSAs was just over two weeks. The Comment was submitted November 16, 2017, UNOS_0107632; HHS directed the OPTN to justify DSAs in response on November 21, UNOS_0147342; the Executive Committee officially failed to do

---

[5] *E.g.,* UNOS_0253672 (in response to a Greenwald communication, Shepard and Glazier search for an "argument that passes the laugh test" that the Executive Committee was legally permitted to take this action). Court orders required UNOS to produce this and other records in connection with the Court's consideration of preliminary injunction relief, but UNOS did not do so.

so on November 24, UNOS_0716469-82[6]; and HHS responded the same day that

DSAs must be eliminated, HHS_00002220.

In liver, it took slightly longer. The Shulman Critical Comment was

submitted May 30, 2018, UNOS_019211-21; on June 8, HHS directed the OPTN

to expeditiously justify DSAs in response, HHS_00007239[7]; on June 25, the

Executive Committee officially responded without doing so, UNOS_0018558-65[8];

and on July 31, HHS responded that DSAs must be eliminated, UNOS_0060749,

HHS_00004991.[9]

---

[6] According to UNOS metadata, this Executive Committee report back to HHS was authored by Glazier, one of many facts she testified she could not recall. July 13, 2023 A. Glazier Dep. Excerpts (Ex. C) at Dep. 123.

[7] Shepard and Glazier took note that by this letter HHS had seized the opportunity to permit UNOS to engineer the elimination of DSAs not just from liver but all organ allocation policies. UNOS_0019003-08. Ex. C at Dep. 216-19.

[8] Glazier was again heavily involved in the response's drafting. *See, e.g.,* UNOS_0019158, UNOS_0018810.

[9] The Court will recall that it was the July 31, 2018 HHS directive requiring elimination of DSAs from all organ allocation policies, including liver, that led to the replacement of the December 2017 liver allocation policy with the "acuity circles" policy. *See* HHS_00001968 (GNYHA letter thanking HHS Secretary for the acuity circles policy and specifically crediting the July 31, 2018 HRSA directive for its adoption).

In each case the result and scheme were the same: use a Critical Comment and HHS directive to illegitimately empower the OPTN Executive Committee to bypass the Board and policymaking process mandated by NOTA and the Final Rule and accomplish the elimination of DSAs. As Glazier put it in one of the emails to HHS officials, "the community has shown it needs help to get there."[10]

In the midst of lung, Shepard celebrated with Executive Committee leadership the efficacy of the bypass scheme in eliminating DSAs, calling it "the best of both worlds," explaining, "Their [HHS'] process authority and our medical judgment. Good solution. Now we just need to get excom [i.e., the Executive Committee] to do our part." UNOS_0248085. But as he otherwise acknowledged, and discovery abundantly demonstrates, OPTN's "medical judgment" had nothing to do with the scheme's execution. *See, e.g.,* UNOS_0144591 (Shepard: "the subject now is law, not lungs").

In the case of each organ, the scheme was utilized not to permit the exercise of OPTN medical judgment, but to squelch it. It is no wonder that the Final Rule requires organ allocation policies to be "based on sound medical judgment" and to

---

[10] UNOS_0104403; *see also* UNOS_0097602. Court orders required UNOS to produce these and other records in connection with the Court's consideration of Plaintiffs' preliminary injunction motion, but UNOS did not do so.

this end "be designed to avoid wasting organs, to avoid futile transplants, to promote patient access to transplantation, and to promote the efficient management of organ placement." 42 CFR § 121.8 (a). But to UNOS leadership intent on eliminating DSAs, these legitimate and mandatory policy concerns were dismissed as mere "logistics" that should not be permitted to "drive policy development." UNOS_018491.[11] Indeed, discovery now shows that in the case of the lung change UNOS had programmed the elimination of DSAs and completed all but final drafting of the response to HRSA and public comment policy document *before* having analyzed any medical data.[12]

In both lung and liver, UNOS blatantly employed the bypass scheme to neuter the sound scientific judgment of the Board and each of the organ

---

[11] Now famously, UNOS leadership even interpreted the Rule's requirement that allocation policies "promote patient access to transplantation" as applying only to patients already on transplant center waitlists. Patients in areas where waitlist access was difficult were, in Glazier's phrase, "dumb fucks" for living there and surgeons supporting them, in Shepard's view, deserved to be torn a "new asshole." UNOS_0018421, UNOS_0018435. At their depositions, Glazier and Shepard expressed regret for the "flippant" language, but not the sentiment. Ex. C at Dep. 140-45; June 23, 2023 B. Shepard Dep. Excerpts (Ex. B) at Dep. 201-06.

[12] Just a day before the change was instituted nationwide, UNOS policy manager, and later counsel, Liz Robbins emailed her director and Shepard, "The only thing we need now are data to support the 250 miles. And lots of drinks." UNOS_0107550.

committees involved that DSAs served important functions in organ allocation policy generally, including with respect to lung and liver, and that eliminating their use was medically ill-advised. There is no doubt that the lung committee opposed on medical grounds the lung change. *See, e.g.*, UNOS_0085988-90. In the case of liver, organ committee opposition on like medical grounds was expected and evident but thanks to the bypass scheme was overridden as well. *See, e.g.,* UNOS_0017610. Indeed, Shepard, Glazier, and others in UNOS leadership treated the squelching of the opposition as a kind of blood sport, UNOS_0018611; UNOS_0143805, as UNOS staffers kept each other posted internally on the progress, UNOS_0090836. It is noteworthy but not surprising that in both cases the bypass scheme made Board and organ committee medical opposition to the allocation changes so irrelevant to the Executive Committee's decision to adopt the changes that in post-facto descriptions of the changes Glazier omitted entirely any reference to the committees' opposition. *See, e.g.,* Ex. C at Dep. 202-08.

In the case of each organ allocation change, lung and then liver, discovery makes evident that the principal concern of UNOS leadership was not whether the Executive Committee would, in Shepard's phrase, "do its part" to override scientific consensus and abandon DSAs. The real concern was whether the new allocation mechanism adopted in DSAs' stead would—the whole point of the

11

scheme—sufficiently advance New York, California, and New England interests. In the case of lung, that concern is evident at the time the 250-mile circle change was under consideration and after it was adopted.[13] So too in the case of liver.[14]

In both lung and liver, to facilitate the bypass scheme and advance the interests of the Shulman backers, UNOS leadership appealed not to medical judgment but to the ersatz legal arguments of Shulman as parroted by Glazier, whom Shepard tagged UNOS' "subject matter expert." UNOS_0144591;

---

[13] UNOS_0097470 (originally withheld by UNOS as privileged) ("We may not want to put this in the briefing paper, but patients with a high LAS in smaller DSAs (NY) will benefit from this new access to organs in nearby OPOs."); UNOS_0107341 (Shepard and Glazier regret that 250 miles may not have been enough, lamenting that "[w]e didn't have any modeling at the time").

[14] In the fall of 2018, after HHS had directed the elimination of DSAs in all organ allocation policies, including liver, and UNOS leadership was promoting even broader "acuity circles" in DSAs' stead, there was anxiety as to whether the proposed change would help those interests enough. As one UNOS official internally expressed: "we have NO IDEA what the new modeling will show—and we are actually a little worried that they will show even less benefit for NY and CA than the December [2017] policy. We shall see." UNOS_0051826.

That UNOS's purpose was to benefit centers and OPOs in those regions is abundantly clear. UNOS_0253672 (Glazier opines to Shepard with respect to lung that although judicial intervention would be regrettable "it would still be helpful for liver" because "it's legal precedent regarding geographic based allocation which a liver candidate in NY (or MA or CA) could use immediately and file suit").

UNOS_0019183. Shepard, Glazier, and others in UNOS leadership repeatedly used these arguments to hector any reluctant UNOS staff and members of the Executive Committee and the transplant community generally to be willing to override the legitimate medical and other policy concerns mandated by the Final Rule. At the time of lung, Shepard applauded Glazier's ability to use "[j]ust enough legal jargon for them to realize the[y're] on your playing field." UNOS_0144534. For liver, immediately following lung, he and Glazier "hatched" the idea of legitimizing this jargon and approach through creation of an ad hoc "geography committee." UNOS_0019003. The committee was stacked with DSA-elimination proponents, including its chair (a Glazier-OPO alumnus), and its UNOS staffers browbeaten into adopting Glazier maxims. UNOS_0144327; UNOS_0020368; *see* Ex. C at Dep. 220-226. One of the committee's principal work products—distributed widely by UNOS following the May 30, 2018 filing by Shulman of his liver Critical Comment—was a webinar featuring Glazier's repetition and endorsement of Shulman's anti-DSA arguments. UNOS_0094275; Ex. C at 36.

Given the bypass scheme's blatant disregard for the exercise of medical judgment required by NOTA and the Final Rule, it is not surprising that actual implementation of the acuity circles policy at issue in this case has had disastrous

effects on the medical efficacy of the nation's liver transplant system.[15] Likewise,

on UNOS's standing and sway within the transplant community[16] and beyond.[17]

_____

[15] Recent analysis by *The Markup* and *Washington Post* found that the policy's implementation caused just what the bypassed transplant community had predicted: the policy "has nearly doubled the median distance livers are transported, increased transport costs, and coincided with the highest number of wasted livers in nearly a decade." Carollo & Tanen, *New Liver Transplant Rules Yield Winners, Losers as Wasted Organs Reach Record High*, The Washington Post (Mar. 21, 2023) (Ex. D at 2).

New York and California, which along with Massachusetts pushed hardest for the policy, "logged their highest number of liver transplants in more than a decade in 2021," but at the expense of sizable drops in transplants in seven states plus Puerto Rico, including Alabama, Iowa, Kansas, Louisiana, North Carolina, Pennsylvania, and South Dakota. *Id.*

Comparing liver death rates across states, "we see that most of the states severely affected by liver disease performed fewer transplants per capita while better off states typically performed more, indicating the policy change did not seem to appropriately change the system to more fairly distribute livers to where they are needed on a per capita basis." Tanen & Carollo, *How We Investigated UNOS's Liver Allocation Policy*¸ The Markup (Mar. 21, 2023) (Ex. E at 7).

[16] In February 2022, public disclosure of Shepard and Glazier's emails about the elimination of DSAs occasioned by the unsealing order in this case led to transplant community calls for Shepard's ouster and reconsideration of the acuity circles policy—complaints Shepard reportedly dismissed with the observation that "the Georgia judge had 'read all of this and ruled the policy could take effect.'" Carollo & Tanen, *How a Group of Health Executives Transformed the Liver Transplant System*, The Markup (Mar. 21, 2023) (Ex. F at 7).

A month later, new HRSA administrator Carole Johnson admonished Shepard, writing him and UNOS that "[t]he language in these emails is inappropriate and unacceptable" and asking for a report within 10 days detailing

14

the actions that UNOS would take in response. UNOS_0931370, UNOS_0931371. UNOS's report in response followed Shepard's lead. In a letter and accompanying board resolution, it defended Shepard, Glazier and the emails, despite concerns with "certain word choices"; lauded the application of "sound medical judgment" that had led to development of the acuity circles policy; and expressed regret that those who called for Shepard's ouster "would make meritless personal attacks against staff and volunteers in an effort to reverse a policy that they disagreed with." UNOS_0931368.

Three months later, it was announced that Shepard would depart UNOS at the end of September 2022. UNOS, *UNOS CEO Brian Shepard to Leave Organization After a Decade of Service* (Jun. 28, 2022) (Ex. G).

[17] Two U.S. Senate Finance Committee hearings over the last year have showcased deep bipartisan dissatisfaction with UNOS's administration of the OPTN, focusing attention on the toxic nature of UNOS's policy-making process in addition to its evident failure to adequately police OPOs. *See A System in Need of Repair: Addressing Organizational Failures of the U.S.'s Organ Procurement and Transplantation Network*: *Hearing before S. Fin. Comm.*, 117th Cong. (2022) (Ex. H); The *Cost of Inaction and the Urgent Need to Reform the U.S. Transplant System*: *Hearing Before S. Subcomm. on Health Care*, 118th Cong. (2023) (Ex. I).

Amplifying the misconduct and bad faith evident from the UNOS emails previously unsealed in this case, which themselves occasioned Senatorial comment, witness after witness testified as to UNOS pressures on the transplant community to toe the UNOS line or face retribution. *See id*.; *e.g.*, *A System in Need of Repair: Addressing Organizational Failures of the U.S.'s Organ Procurement and Transplantation Network*: *Hearing before S. Fin. Comm.*, 117th Cong. (2022) (statement of Diane Brockmeier at 4, President & CEO, Mid-America Transplant) (Ex. J) ("Board members are kept in the dark about critical matters, and are marginalized, particularly if they have views that differ from UNOS leadership"). Summing up the views of Senators on both sides of the aisle, Sen. Elizabeth Warren (D-MA) told Shepard, testifying August 3, 2022 on behalf of UNOS, "You should lose this contract." Malena Carollo, *HHS Plans Breakup of Organ Transplant Monopoly*, The Markup (Mar. 22, 2023) (Ex. K at 3).

What is remarkable, as revealed by the 56(d) production, is the extent of HHS awareness, involvement, and complicity in UNOS' improper scheme. In the Rule 56(d) discovery period, after the appointment of the Special Master, UNOS finally produced a number of secretive *ex parte* communications with HHS, some of which have been discussed in this Notice. *See supra* notes 2, 5 & 10. These communications make clear that UNOS and HHS identified and discussed the Shulman Critical Comments as presenting a *unique opportunity* to finally *get there* and eliminate, first for lung and then liver and other organs, the allocation tools—DSAs and Regions—that OPOs and hospitals across New York, California and Massachusetts had been intensively lobbying against for years. Discovery also makes clear that pursuant to these secretive discussions, HHS took advantage of the Comments by issuing carefully worded, time-sensitive directives that allowed an Executive Committee primed by Shepard and Glazier to bypass the OPTN Board and organ committees, fail to defend DSAs and leave HHS no choice but to

---

In March 2023, HRSA's Johnson announced plans to break up UNOS's monopoly control, *id*., and just last month both Houses of Congress passed by unanimous consent Senate Finance Committee-sponsored legislation designed to afford HHS full statutory authority to do so. Securing the U.S. Organ Procurement and Transplantation Network Act, HR 2544 (July 27, 2023) (Ex. L).

order their elimination. The result was a sea change in organ allocation policy effected, as proposed by Glazier, "without [HHS] directly touching it."

## THE COURT SHOULD (1) REOPEN BRIEFING ON SUMMARY JUDGMENT AND SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND (2) ALLOW A MOTION TO SHOW CAUSE

In its September 30, 2021 Order authorizing 56(d) discovery, the Court reiterated that key to the January 2020 denial of Plaintiffs' preliminary injunction motion was the Court's finding that at that point Plaintiffs had "fail[ed] to tie any of [UNOS's] alleged misconduct to HHS, or to show that HHS was aware of it." Doc. 345 at 2 (quoting *Callahan*, 434 F. Supp. 3d at 1356). As requested in this Notice, based on the records produced in the just-completed round of Rule 56(d) discovery, the Court should now afford Plaintiffs the opportunity to do so by authorizing supplemental briefing on Defendants' pending motions and by permitting Plaintiffs to file a summary judgment motion of their own. In connection with same, Plaintiffs likewise seek the opportunity to move for supplementation of the administrative record.

Further, the Court should entertain a motion from Plaintiffs to permit appropriately tailored inquiry and require UNOS to show cause why it should not be sanctioned for its failure to produce prior to the Court's consideration of Plaintiffs' preliminary injunction motion the now-revealed communications with

17

HHS. *See supra* notes 2, 5 & 10. The communications matched the search criteria the Court directed UNOS to use in November 2019 but were not produced. That was contrary to the Court's clear orders, and significantly prejudiced the Court's consideration of the case. The wrong was compounded in early 2020 when UNOS stayed silent as the Court, in denying preliminary injunctive relief, signaled the importance of such communications but noted their absence from the record. The wrong was compounded again in late 2021 and early 2022 when the Court reiterated Plaintiffs' authorization to discover such communications pursuant to Rule 56(d). UNOS still did not produce the communications despite its representation that it had repeated the 2019-ordered search, only now with "a broader set of custodians." Doc. 371 (Tr.[18] at 15). Further, UNOS adamantly urged the Court to prohibit, or at least postpone, any further discovery as to lung,[19] even though it was apparent, and the Court well understood, that there was a clear connection between UNOS's elimination of DSAs first with lung and then liver

---

[18]The official transcript of this telephone conference with the Court has been prepared but has not yet been filed.

[19]*E.g.*, Doc. 371 (Tr. at 10) ("discovery should be limited to liver as this case has always been about liver"); Doc. 374 at 15 ("The suit challenges a December 2018 policy for **liver** allocation") (emphasis by UNOS); Doc. 376 at 7-9 (suggesting "as a way forward" that the Court focus on other issues).

(Doc. 376 at 5-7), and even though UNOS knew that that lung-liver connection was the subject of the scheming communications with HHS that had not been produced. All the while, UNOS incorrectly represented that "obviously we have already produced any documents that deal with lung and liver." Doc. 371 at 9. In March 2022, the Court rejected UNOS's proposed prohibition or delay, appointed a Special Master and discovery was thereafter provided.[20]

In no case is a party entitled to ignore court orders and proper process without consequence. But UNOS has repeatedly done so. UNOS began the case by violating a Court injunction, Doc. 98, establishing a pattern of obstructive and disingenuous behavior that, as the Court then found, pervaded the fall 2019

---

[20] UNOS eventually produced almost 20 tranches of documents in response to the Rule 56(d) discovery authorized by the Court—1,915 prior to the Special Master's appointment and nearly 75,000 after, finally including communications with HHS about the scheme.

Discovery establishes that there were other such communications, both by (UNOS and private) email and text, that have not been produced to Plaintiffs. However, UNOS informed Plaintiffs and the Special Master without explanation that, despite a December 2018 litigation hold and a diligent search, no records of such communications have been located. *Cf.* Ex. B at Dep. 17-24 (UNOS let Shepard alone search his personal email folders and phone).

proceedings[21] and has persisted since.[22] Plaintiffs should now be afforded an

opportunity to expose and redress this misconduct, specifically the wrongful

withholding of HHS communications, through a motion to show cause, seeking

appropriate inquiry and sanctions.

---

[21] In just over a month the Court had to grant three motions to compel, often on the same issues, Docs. 187, 233, 254, the third despite the Court's observation to UNOS counsel December 17, 2019 that:

> I feel like UNOS has given me a little bit of the runaround, frankly….whatever has happened here has been troubling to me….I actually order various—you to give various documents. And you don't give them. I'm looking at the second motion to compel and your response. And I just feel like I'm in Groundhog Day.

Doc. 238 at 71-72.

[22] This Court has not been alone in being troubled by UNOS's conduct. *Callahan v. UNOS*, 17 F.4th 1356, 1362 & n. 1 (11th Cir. 2021) (UNOS's appellate "argument distorts our case law beyond recognition," noting that a purportedly "cleaned up" parenthetical of a case law quotation was "used to obscure relevant information"); Staff of S. Fin. Comm., 117th Cong., Memo on Organizational Failures of U.S.'s Organ Procurement and Transplantation Network (Aug. 3, 2022) (Ex. M at 17-19) (calling out UNOS for years of "withhold[ing] documents relevant to the Committee's inquiry").

Dated: August 30, 2023

Respectfully submitted,

/s/ Peter C. Canfield
Peter C. Canfield
Ga. Bar No. 107748
CANFIELD LAW LLC
34 Inman Circle N.E.
Atlanta, Georgia 30309
Telephone: 1.678.296.5413

Will R. Taylor
*Admitted pro hac vice*
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: 1.832.239.3939
Facsimile: 1.832.239.3600

Glenn L. Krinsky
*Admitted pro hac vice*
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: 1.213.243.2540
Facsimile: 1.213.243.2539

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies, pursuant to Local Rule 5.1(C), that this document

has been prepared in Times New Roman, 14 point, as approved by the Court.


/s/ _____

Peter C. Canfield
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.1, I hereby certify that on this day I electronically filed the above PLAINTIFFS' SEALED NOTICE IN RESPONSE TO THE COURT'S ORDER OF SEPTEMBER 30, 2021 with the Clerk of Court using the CM/ECF system which will automatically send e-mail notifications of such filing to all attorneys of record.

Dated: August 30, 2023

/s/ _____

Peter C. Canfield
*Counsel for Plaintiffs*